## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

| | |
|---|---|
| SOCIEDAD AERONAUTICA DE | |
| SANTANDER S.A., , | CV 09-103-M-DWM-JCL |
| Plaintiff, | FINDINGS AND |
| | RECOMMENDATION |
| vs. | OF UNITED STATES |
| | MAGISTRATE JUDGE |
| FREDERICK WEBER, | |
| Defendant. | |

_____

This breach of contract and declaratory judgment action comes before the

Court on the parties' cross-motions for summary judgment regarding Plaintiff

Sociedad Aeronautica De Santander S.A.'s ("Sociedad") claim for the return of a

$100,000 escrow deposit  it made toward the purchase of an aircraft from

Defendant Frederick Weber ("Weber").  For the reasons set forth below, Weber's

motion for summary judgment should be granted and Sociedad's motion for

summary judgment should be denied.

## I.  Background[1]

On May 20, 2007, Sociedad's predecessor in interest, Continental

_____

[1] Except where noted, the following facts are undisputed.

Commercial Transport SA,[2] entered into a contract for the purchase of a

McDonnell Douglas MD600 helicopter from Weber.  Pursuant to the terms of the

Aircraft Purchase Agreement ("Purchase Agreement"), Sociedad agreed to pay

Weber a total of $1,375,000.00 for the helicopter.  Dkt. 1-2 ¶ 3.1   Some three

weeks before signing the Purchase Agreement, Sociedad placed a $100,000

deposit into escrow with Insured Aircraft Title Service, Inc. ("Escrow Agent")

Dkt. 16 ¶ 4B; Dkt. 1-2 ¶ 5.1.

The Purchase Agreement specified that Sociedad was to transfer the balance

of the purchase price to the Escrow Agent prior to delivery.  Dkt. 1-2 ¶ 11.1.  As to

the time for delivery, the Purchase Agreement directed Weber to deliver the

aircraft within seven days after rectification or negotiation of any defects, but no

later than May 31, 2007 unless otherwise agreed by the parties.  Dkt. 1-2, ¶ 6.  The

parties interpret this portion of the Purchase Agreement differently.   Sociedad

reads the provision as establishing May 31, 2007, as the date by which the

transaction was originally set to close.  Dkt. 20, ¶ 4.  Weber, in contrast, points to

---

[2] Continental Commercial Transport has since assigned all of its rights and
claims against Weber to Sociedad.  Dkt. 16, ¶ 4L.  In light of that assignment,
there is no distinction between Sociedad and Continental Commercial Transport
for summary judgment purposes.  This Court will therefore refer to the two entities
interchangeably as "Sociedad" in the ensuing discussion.

the fact that Sociedad signed an Aircraft Acceptance Certificate on May 21, 2007,[3] and maintains the parties were thus obligated to close the transaction seven days later – on May 28, 2007.[4]  Dkt. 25, ¶ 4.

While the parties dispute the date by which the transaction was originally set to close, they agree that as of May 31, 2007, the total amount in escrow was $1,000,000.  Dkt. 16 ¶ 4C.  This amount was $375,000 short of the $1,375,000 purchase price.  Sociedad sought an extension from Weber, who agreed on May 29, 2007, to extend the deadline for final payment until June 10, 2007, on the understanding that Sociedad direct the Escrow Agent to release the $100,000 deposit.  Dkt. 16, ¶ 4D-E.  On May 30, 2007, Sociedad authorized the Escrow Agent to transfer its $100,000 deposit to Weber, and the Escrow Agent did so that day.  Dkt. 25, ¶ 7.

The newly agreed upon June 10, 2007, closing date was a Sunday – a day on which most, if not all, of United States banks are closed.  Dkt. 16, ¶ 4G.  That Monday, June 11, 2007, Sociedad deposited the $375,000 balance of the purchase price into the escrow account, along with an additional $25,000 in escrow fees.

---

[3] Dkt. 24, at 14.

[4] As Weber notes in his reply brief, because May 28, 2007, was Memorial Day, the effective deadline for delivery would have been May 29, 2007.

Dkt. 16, 4H; Dkt. 25, ¶ 8.  Almost immediately, the United States government

wrongfully and unexpectedly seized the entire $1,300,000 on deposit in the escrow

account.  Dkt. 16, ¶ 4J.  Sociedad made a claim to the seized funds in federal

court, and after settling the case in November 2008 recovered the entirety of the

$1.3 million in seized funds.   Dkt. 16, ¶ 4K.

On December 16, 2008, approximately one week after the government had

returned the money, Sociedad wrote Weber asking for the return of its $100,000

deposit.  Dkt. 24, at 17.  Sociedad took the position its "inability to complete the

Helicopter purchase was not due to any act of its own, but due to outside forces

beyond its control – a *force majeur.*"  Dkt. 24, at 17.  Citing force majeure,

Sociedad requested that Weber refund the $100,000 deposit he had received from

the escrow account in June 2007.  Dkt. 24, at 17.  Weber refused to return the

deposit, and instead offered to credit the amount of the $100,000 deposit if it

would proceed with its purchase of the helicopter.  Dkt. 29-1, at 3.

The parties having thus reached an impasse, Sociedad commenced this

lawsuit in an effort to recover its $100,000 deposit.  Sociedad asserts a claim for

breach of contract, alleging that Weber has refused to return the $100,000 deposit

in violation of the Purchase Agreement's force majeure clause.  Dkt. 1, at 5-6.

Sociedad also asserts a claim under the Montana Uniform Declaratory Judgment

Act, Mont. Code Ann. § 27-8-101, et seq, asking that the Court declare it is

entitled to the return of its $100,000 deposit.   Dkt. 1, at 6-7.  Weber has

counterclaimed for similar relief, asking for a declaratory judgment stating that he

is entitled to retain the $100,000 deposit.  Dkt. 6, at 4-5.

The parties have filed cross-motions for summary judgment on their

respective claims.

## II.  Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary

judgment "if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  The party seeking summary

judgment bears the initial burden of informing the Court of the basis for its

motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of any genuine issue of material fact.  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden

where the documentary evidence produced by the parties permits only one

conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).  And

where the nonmoving party bears the burden of proof at trial, the moving party

may satisfy its initial burden on summary judgment by showing that there is an absence of evidence in the record to support the nonmoving party's claims. *Celotox*, 47 U.S. at 325.

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories of admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings...." *Anderson*, at 248.

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). In doing so, the Court must consider all evidence submitted

in support of the cross-motion in determining whether there is a triable issue of fact, even though no opposition to the adverse party's motion is filed.  *Fair Housing Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136-37 (9th Cir. 2001).

## III.  Discussion

Sociedad's argument in support of its motion for summary judgment is straightforward, and rests primarily upon the Purchase Agreement's force majeure clause.  The force majeure clause provides, in pertinent part, that if

> one of the parties...is prevented from performing any of the obligations incumbent on it under the Agreement due to circumstances beyond its reasonable control, ... [and]...if all obligations have not been performed within 30 days from the date of this Agreement, then any party...shall be entitled to terminate the Agreement, and if the Agreement is terminated in accordance hereto, the deposit shall be repaid to [the] Buyer, or its assignee.

Dkt. 102, ¶ 20.

According to Sociedad, it timely deposited the full purchase price for the helicopter into escrow on the first legal business day after the June 10, 2007, extended closing date.  But because the government promptly seized those funds, Sociedad claims it was prevented from performing its obligations under the contract due to circumstances beyond its reasonable control.  Sociedad therefore maintains that the government's seizure of those escrow funds constituted a force

majeure within the meaning of the Purchase Agreement's force majeure clause. Sociedad argues it terminated the Purchase Agreement by way of its December 2008 letter, and takes the position that Weber is therefore required to return the $100,000 deposit pursuant to the terms of the force majeure clause.

Weber, of course, views matters differently.   Weber stands by his position that the transaction was originally set to close on May 28, 2007 – seven days after Sociedad acknowledged in writing that it was accepting the aircraft.  Because Socieded had not placed the balance of the purchase price in escrow by then, Weber argues Sociedad was in default as of the May 28, 2007, closing date.  At that point, Weber maintains he had the right to terminate the agreement, have the $100,000 deposit released to him from escrow, sue Sociedad for the balance due, and/or market the helicopter to other potential buyers at a possibly higher price. Weber claims he relinquished these rights and agreed to extend the deadline for closing the transaction until June 10, 2007, in exchange for Sociedad's agreement to release the $100,000 deposit and forego any claim it might later have to the money in the event of, for example, a force majeure.   Weber characterizes this agreement with Sociedad as "a new, valid, and binding contract" or, alternatively, an amendment to the Purchase Agreement.  Dkt. 26, at 3.

Whether Weber is required to return the deposit pursuant to the Purchase

Agreement's force majeure clause, as Sociedad maintains, or whether the parties effectively entered into a new or amended agreement whereby Sociedad relinquished any claim to the deposit in exchange for an extended closing deadline, as Weber maintains, presents a question of contract law.[5]

In Montana, the "the construction and interpretation of a contract is a question of law for the court to decide." *State ex rel., Bullock v. Philip Morris, Inc.*, 217 P.3d 475, 480 (Mont. 2009). The court is to interpret a contract so "as to give effect to the mutual intention of the parties as it existed at the time of the contracting, so far as the same is ascertainable and lawful." *State ex rel., Bullock*, 217 P.3d at 480 (quoting Mont. Code Ann. § 28-3-301). If "a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible...." *State ex rel., Bullock,* 217 P.3d at 480 (quoting Mont. Code Ann. 28-3-303). The court should read the contract as a whole, "so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." *State ex rel., Bullock*, 217 P.3d at 480. If the language of the contract "is clear and

---

[5] Consistent with the notion that the substantive law of the forum state applies where, as here, federal jurisdiction is premised on diversity of citizenship, the parties have stipulated that their dispute is governed by Montana contract law and Montana's Declaratory Judgment Act. Dkt. 16 ¶ 4O. *See e.g. Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

unambiguous and, as a result, susceptible to only one interpretation, the duty of the court is to apply the language as written." *Estate of Pruyn v. Axmen Propane, Inc.*, 223 P.3d 845, 855 (Mont. 2009) (quotation omitted).   In doing so, the court should if possible interpret a contract so as to "make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties." *State ex rel. Bullock*, 217 P.3d at 480 (quoting Mont. Code Ann. § 28-3-201).

"Whether an ambiguity exists in a contract is also a question of law." *Corporate Air v. Edwards Jet Center*, 190 P.3d 1111, 1121 (Mont. 2008).  An ambiguity exists where the language of a contract, taken as a whole, is "susceptible to at least two reasonable but conflicting meanings." *Riehl v. Cambridge Court GF, LLC*, 226 P.3d 581, 587 (Mont. 2010) (quoting *Performance Machinery Co., Inc. v. Yellowstone Mountain Club, LLC*, 169 P.3d 394, 402 (Mont. 2007)).  This determination is made on an objective basis. *Riehl*, at ¶ 26.  If the court finds that an ambiguity exists, then the interpretation of the ambiguous terms "involves determining a question of fact regarding the intent of the parties to the contract." *Riehl*, at ¶ 26 (quoting *West v. Club at Spanish Peaks, LLC*, 2008 MT 183, ¶ 53, 343 Mont. 434, 186 P.3d 1228).  Where there is such an ambiguity, "parol evidence can be used to determine the parties' intent." *Estate of*

*Pruyn,* 223 P.3d 845 at 854 (quotation omitted).

It is with these principles in mind that the Court turns now to the parties'
respective arguments as to the proper disposition of the $100,000 deposit under
the terms of the Purchase Agreement and any amendment thereto.   As noted
above, Sociedad and Weber disagree as to the date their transaction was originally
set to close.   Citing Paragraph 6.1 of the Purchase Agreement, Weber maintains
that Sociedad was required to place the entire purchase price into the escrow
account by May 28, 2007, while Sociedad argues it had until May 31, 2007, within
which to do so.   Regardless of the original closing date, it is undisputed that
Sociedad asked Weber for an extension, and that Weber agreed to extend the
closing date until June 10, 2007,[6] on the condition that Sociedad direct the Escrow
Agent to release its $100,000 deposit.   Dkt. 16 ¶ 4D-E; Dkt. 24 at 15-16.   While
the parties do not dispute that they reached an agreement to extend the date by
which their transaction was originally set to close, they differ as to the implication
and legal nature of that agreement.

---

[6] Because June 10, 2007, fell on a Sunday, Sociedad had until Monday June 11,
2007, within which to perform.   See Mont. Code Ann. § 1-1-216(1)(a) (stating that
Sunday is a legal holiday); Mont. Code Ann. § 1-1-307 (stating that when an act
appointed by contract is to be performed on a holiday, that "act may be performed
upon the next business day with the same effect as if it had been performed upon
the day appointed").

Sociedad maintains that the parties were simply exercising their option under Paragraph 6.1 of the Purchase Agreement to extend the closing date and in doing so did not enter into a second contract or otherwise amend the terms of their original agreement.  Paragraph 6.1 of the Purchase Agreement specifies, in part, that the time of delivery was "to be no later than 31st May 2007 unless by agreement between Buyer and Seller."  Dkt. 1-2 ¶ 6.1.  Sociedad argues that the parties reached just such an agreement here, with Weber acceding to Sociedad's request and agreeing to extend the May 31, 2007, closing deadline.  With the exception of that closing deadline, Sociedad contends that all other terms of the Purchase Agreement remain unchanged and it is entitled to enforce the contract's remaining provisions, including its force majeure clause.

The problem with Sociedad's argument is that the record establishes the parties did more than just agree to extend the closing deadline under Paragraph 6.1.  Weber agreed to an extension only on the condition that he receive something in return, namely, the $100,000 deposit.  Dkt. 24, at ¶ 15.  Sociedad did in fact direct the Escrow Agent to release the $100,000 deposit and transfer that amount to Weber's account on May 30, 2007, in exchange for Weber extending the closing deadline.  Dkt. 24, at 16.  Weber's affidavit in support of his motion elaborates that "[i]n return for receipt of the $100,000 without litigation, I agreed

-12-

to a new closing deadline of June 10, 2007." Dkt. 24, at ¶ 10.  Weber also states

that on May 29, 2007, he advised his broker, Aradian Aviation, Inc., that he would

"extend the deadline to June 10, 2007 if the $100,000 deposit became non-

refundable and was released to [him]." Dkt. 24, at ¶ 8.

      The fact that the parties did not memorialize their agreement in a signed

writing does not necessarily mean that the agreement was ineffective for purposes

of modifying the terms of the Purchase Agreement.  By statute in Montana, "[a]

contract in writing may be altered by ... an executed oral agreement...."  Mont.

Code Ann. § 28-2-1602.  To effectively modify a written contract, an oral

agreement must be fully executed on both sides.  *Richards v. JTL Group, Inc.*, 212

P.3d 264, 271 (Mont. 2009).  It is also necessary that such an executed oral

agreement satisfy the essential elements of a contract, including the requirement

that there be sufficient consideration.  *Hanson v. Water Ski Mania Estates*, 108

P.3d 481, 485 (Mont. 2005).   As put by the Montana Supreme Court, "[w]ithout

consideration, there can be no oral contract" and "[w]ithout an oral contract, there

can be no executed oral contract" within the meaning of Mont. Code Ann. § 28-2-

1602.  *Hanson*, 108 P.3d at 485.   See also *Heckman and Shell v. Wilson*, 487 P.2d

1141, 1147 (Mont. 1971) (recognizing that for an executed oral agreement to

modify a contract, the oral agreement must be supported by adequate

consideration).  As Weber notes, the Montana Supreme Court has recognized the principle that an oral agreement to extend a contractual deadline in exchange for payment is supported by adequate consideration.  See *Griffiths v. Thrasher*, 26 P.2d 995, 999 (Mont. 1933).

The undisputed evidence of record establishes that the parties' oral agreement was fully executed on both sides.  There is no dispute that Weber agreed to extend the closing deadline to June 10, 2007, in exchange for Sociedad agreeing to release its $100,000 deposit.  Nor is there any dispute that the parties did in fact extend the closing deadline to June 10, 2007, and Sociedad authorized the Escrow Agent to release its deposit to Weber's account as agreed.

Regardless of whether the sale of the helicopter was originally set to close on May 28, 2007, as Weber maintains, or on May 31, 2007, as Sociedad claims, Weber gave up his right to enforce that original closing deadline.  Weber agreed to extend the closing deadline to June 10, 2007, in exchange for which Sociedad agreed to release its $100,000 deposit from escrow and transfer the money to Weber's account.  In doing so, each party agreed to give up something of value. For Weber, it was his right to enforce the original closing deadline.  For Sociedad, it was releasing the $100,000 deposit from escrow and relinquishing any claim to the money.  Although Sociedad now claims it should be allowed to recover that

-14-

deposit under the terms of the force majeure clause, were that the case then Weber would not have received anything of value in return for extending the closing deadline.

By the time Weber agreed on May 29, 2007, to extend the closing deadline in exchange for release of the deposit, the deposit was already non-refundable absent a default in delivery or force majeure.  This is so because under Paragraph 5.3 of the Purchase Agreement, the deposit became non-refundable upon initial acceptance by the buyer unless the seller defaulted in delivery.  Dkt. 1-2, ¶ 5.3. Sociedad indicated in writing on May 21, 2007, that it was accepting the aircraft for all purposes.  Dkt. 24, at 14.  Thus, by the time the parties agreed several days later to extend the closing deadline, Sociedad's deposit was already non-refundable absent a default in delivery.

The only other situation in which Sociedad might have been entitled to recover its deposit would have been in the event of a force majeure.  Dkt. 1-2, ¶ 20.1.  In other words, by the time Sociedad agreed to release the deposit in exchange for an extended closing deadline, Weber was already entitled to the deposit unless he defaulted in delivery or the Purchase Agreement was terminated on force majeure grounds.  Dkt. 1-2, ¶¶ 5.3; 20.1.  For Sociedad to have given Weber something more than he already had at that point, it must have released the

deposit from escrow along with any claim to the money.  Weber has thus met his burden as the party moving for summary judgment of showing that his oral agreement with Sociedad was supported by sufficient consideration, and Sociedad has not presented any evidence to the contrary, either by affidavit or otherwise.

Consistent with general principles of contract law, Weber and Sociedad modified the terms of the Purchase Agreement with a fully executed oral agreement supported by adequate consideration.  That modification extended the deadline by which their transaction was to close and eliminated any claim Sociedad might thereafter have to its deposit.

Interpreting the parties' agreement as one pursuant to which Sociedad released any claim it might have to the deposit is likewise consistent with general principles of escrow, as well as the overall terms of the Purchase Agreement.  As commonly understood, "an escrow is created when one party to a transaction delivers a sum to a third party, the escrow agent, for him or her to hold until the performance of a condition and then to deliver to the other party to the transaction." C.J.S. Escrow § 1.  An escrow agent may not disburse funds from an escrow account unless and until those funds are "[a]vailable for withdrawal from the account as a matter of right."  Mont. Code Ann. § 37-7-117(5)(a).  Consistent with these principles, nothing in the Purchase Agreement contemplated releasing

any of the money held in escrow to the seller prior to delivery and closing.  Dkt. 1-

2.  When Sociedad authorized the Escrow Agent to release its deposit to Weber

prior to closing, it likewise released any claim to the money it might otherwise

have had under the force majeure provision if the money had remained in escrow.

While the above analysis is premised on general principles of Montana

contract law, particularly those regarding fully executed oral agreements as

codified in Mont. Code Ann. § 28-2-2602, the result would be the same under

Montana's Uniform Commercial Code ("UCC"), Mont. Code Ann. § 30-2-101 et

seq.[7]  The UCC provides, in pertinent part, that "[a] signed agreement which

excludes modification...except by a signed writing cannot be otherwise

modified..." and "[t]he requirements of the statute of frauds section of this chapter

(30-2-201) must be satisfied if the contract as modified is within its provisions."

Mont. Code Ann. § 30-2-209(2) & (3).

The Purchase Agreement signed by both Weber and Sociedad contained an

---

[7] Weber cites general principles of contract law in support of his motion for summary judgment, and Sociedad does not dispute that those principles apply here.  Sociedad does, however, suggest that if the parties had entered into a second contract, that "contract would have had to be reduced to writing pursuant to the statute of frauds set forth in § 30-2-201, MCA, which requires such if the price of the goods is $500 or more."  Dkt. 29, at 5.  Because Sociedad has referenced the UCC, the Court will out of an abundance of caution address that statutory scheme as well.

integration clause that excluded modification except by a signed writing. Dkt. 1-2, ¶ 15.2.   Furthermore, the agreement as modified fell within the UCC's statute of frauds section because it constituted "a contract for the sale of good for the price of $500 or more...."  Mont. Code Ann. § 30-2-201.   Although the parties did not memorialize their agreement to extend the closing deadline in exchange for release of the deposit in a signed writing, they fully executed that agreement as discussed above.  Under Mont. Code Ann. § 30-2-209(4), "an attempt at modification [that] does not satisfy the requirements of subsection (2) or (3) [] can operate as a waiver."  That is what happened here.  Because the parties fully executed their agreement to extend the closing deadline in exchange for release of the deposit from escrow, their "attempt at modification" operated as a waiver of the requirements set forth in Mont. Code Ann. § 30-2-209(2)&(3).

Unlike a modification under Montana's common law of contracts, "[a]n agreement modifying a contract [under the sale of goods provision of the UCC] needs no consideration to be binding."   Mont. Code Ann. § 30-2-209(1).   Weber and Sociedad could have done what Paragraph 6.1 of the Purchase Agreement contemplated and simply agreed to modify the deadline by which the sales transaction was to close without supporting their agreement with sufficient consideration.  As discussed above, however, the undisputed evidence of record

establishes that the parties did more than just agree to modify the closing deadline. In exchange for agreeing to extend the closing deadline to June 10, 2007, Weber demanded that Sociedad release the $100,000 deposit from escrow and transfer it to his account.   Dkt. 24, at 14.  Sociedad agreed, as evidenced by the fact that it authorized the release of those funds from escrow on May 30, 2007.

With respect to his motion for summary judgment, Weber has met his initial burden of showing that there are no genuine issues as to any material fact and that he is entitled to judgment as a matter of law.  The undisputed evidence of record establishes that Weber demanded that Sociedad release the deposit in consideration for his agreement to extend the closing deadline.  As discussed above, the only way that release could have constituted the consideration Weber sought and Sociedad agreed to provide was if Sociedad likewise relinquished any claim it might have to the money.  Sociedad has not stepped forward with any evidence to the contrary in response to Weber's showing.[8]

In sum, whether the parties' agreement to extend the closing deadline in exchange for release of the deposit from escrow is analyzed under  Montana's

---

[8] In its statement of undisputed facts, Sociedad merely states that it "instructed the [Escrow Agent] to transfer $100,000 of the escrow funds to [Weber], and the [Escrow Agent] did so without any mention by [Sociedad] that the $100,000 was non refundable." Dkt. 20, at ¶ 7.  Standing alone, Sociedad's statement – even if accepted as true – is insufficient to sustain Sociedad's burden under Rule 56(e).

common law of contracts or the UCC, the result is the same.   The parties

effectively modified the terms of the Purchase Agreement and in doing so

extended the closing deadline to June 10, 2007, and eliminated any claim Sociedad

might have to the deposit under the Purchase Agreement's force majeure

provision.[9]

## IV.   Conclusion

For all of the above reasons, Weber is entitled to judgment as a matter of

law on Sociedad's breach of contract and declaratory judgment claims, as well as

his own counterclaim.   Accordingly,

IT IS RECOMMENDED that Weber's motion for summary judgment be

GRANTED and Sociedad's motion for summary judgment be DENIED.

DATED this 20th day of May, 2010

   /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

_____

[9] Having so concluded, the Court need not address the parties' arguments as to whether the government's seizure of the funds in escrow constituted a force majeure as contemplated by the Purchase Agreement.